# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LYNN BRUMBAUGH-SANDOVAL, | Case No. 1:15-cv-585-EPG |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Michelle Lynn Braumbaugh-Sandoval ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Erica P. Grosjean.[1] Upon a review of the entire record, the Court finds the ALJ's decision is proper and is supported by substantial evidence in the record. Accordingly, this Court denies Plaintiff's appeal.

///

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (Docs. 6 and 8).

1

**II. BACKGROUND AND PRIOR PROCEEDINGS**[2]

On October 3, 2013, Plaintiff filed an application for DIB alleging disability beginning May 15, 2010.  AR 159-163.  Plaintiff's applications were denied initially and on reconsideration.  AR 100-105.  Subsequently, ALJ Sharon L. Madsen held a hearing on September 23, 2014 (AR 36-62), and issued an order denying benefits on November 21, 2014.  AR 21-31.  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. AR 1-6.

Plaintiff now challenges that decision, arguing that the ALJ's mental residual functional capacity ("RFC") is improper and is not supported by the medical record.  Specifically, Plaintiff contends that the ALJ improperly rejected Dr. Martin's opinion, did not consider other objective evidence in the medical record including other doctors' opinions and their Global Assessment Functioning ("GAF") scores,[3] and that the ALJ failed to properly evaluate Plaintiff's alcohol use.  Plaintiff also argues that the ALJ improperly rejected Plaintiff's testimony, as well as the lay opinion evidence.  The Defendant contends that the ALJ's assessments of the physicians' opinions and the medical record are supported by substantial evidence and that rejection of Plaintiff's testimony and the lay witness' opinion was proper.  Specifically, the Commissioner argues that the ALJ properly determined that Plaintiff's mental impairments were exacerbated by her drug and alcohol use and that her symptoms improved when she was not drinking and taking her medications as prescribed.

**A.  The Medical Record**

The Court has reviewed the entire medical record.  Only medical evidence that relates to Plaintiff's psychological impairments is summarized below as these are relevant to issues raised in this appeal.

***1.  Plaintiff's Treatment History***

In March 2010, Plaintiff was diagnosed with adjustment disorder with mixed anxiety, depressive disorder NOS (not otherwise specified), and Amphetamine dependence.  AR 767.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[3] A GAF score is a generalized description of a claimant's level of psychological symptoms.  *See*, DSM-IV at 32 (4th Ed.  2000) (DSM IV).

On March 22, 2011, Plaintiff was treated at the Madera Hospital emergency room ("ER") for dizziness, anxiety and arthritic pain. AR 757; 760. Ernest Kazato, M.D., diagnosed positional vertigo and anxiety and treated Plainitff with Ativan (anti-anxiety medication) and Meclizine (for dizziness and nausea). AR 759. After she improved, Plaintiff was discharged with prescriptions for Xanax and Meclizine AR 761.

On August 31, 2011, Plaintiff was transported to Madera Hospital by Emergency Services after ingesting an unknown amount of Benadryl and alcohol. AR 745-746. Acute toxicity and depression were diagnosed and Plaintiff was placed on a legal hold ("5150"). AR 745, 752. Plaintiff's blood alcohol level was high, but results of drug screening were negative. AR 755-56. Suicide precautions were initiated and wrist restraints were used to prevent Plaintiff from pulling out her IV. AR 747. After she improved, Plaintiff was taken off of the legal hold and discharged. AR 747.

On September 14, 2011, Plaintiff was placed on a legal hold after ingesting Librium and alcohol. AR 736-737. Her blood alcohol level was high, but drug screening was negative. AR 742-743. After Plaintiff was treated and medically cleared by Madera Hospital, she was transferred to Kaweah Mental Health. AR 737-739.

On October 14, 2011, Plaintiff threatened to kill herself by ingesting alcohol with prescription medications. AR 731. She was transferred by ambulance to Madera Hospital and placed on a legal hold. AR 731. Her blood alcohol level was high and she tested positive for Benzodiazapene. AR 733-734. After she improved, Plaintiff was discharged, indicating she was going to move into a sober living house in November. AR 727.

On July 4, 2012, Plaintiff was placed on a legal hold by the sheriff because she said she wanted to die. She was transported to the Madera Hospital ER by ambulance. AR 690. Plaintiff said she had been drinking for five days and had not been taking her prescribed medications. AR 466; 685. She also said she had used Methamphetamines two days previously and was experiencing withdrawal. AR 482; 489; 683; 685; 690. The attending physician noted that urinalysis had not shown Methamphetamines in Plaintiff's system, and discharged her after her alcohol intoxication and suicidal ideation had resolved AR 691; 693.

3

On July 10, 2012, Plaintiff was placed on a legal hold by the sheriff because she drank a bottle of vodka and ingested ten aspirin. AR 448; 454; 458.   Plaintiff reported she had not taken her Prozac for three to four months.  She was transported to the Madera Hospital ER where she was given a bedside sitter. AR 447. She appeared depressed, her blood alcohol level was high, and drug screening was negative. AR 448; 450; 682-83. Although a mental status examination revealed she was hearing voices, she was discharged with instructions for follow-up with Behavioral Health. AR 451-452.

On October 2, 2012, Plaintiff was placed on a legal hold and taken by ambulance to Madera Hospital ER after taking Prozac (an anti-depressant) and two shots of whiskey, and threatening to kill herself. AR 431.  She reported Methamphetamine use within the last seven days.  AR 431. She was observed to be distraught, disheveled, depressed, overwhelmed, and hopeless; her memory was fair/poor; her judgment was fair and her insight good; and she was hearing multiple voices. AR 435. She said if she were released she would attempt suicide until she was successful. AR 435. Depression was diagnosed and, after she was medically cleared, she was transferred to Marie Green Facility. AR 429; 441.

On October 8, 2012, Plaintiff was placed on a legal hold and taken to Madera Hospital because she had taken a bottle of Trazadone (anti-depressant), drank four shots of whiskey, and said she wanted to kill herself to stop the voices. AR 420. She was discharged the next day after denying any suicidal ideation (AR 419), and was advised to follow-up with mental health. AR 408.  It was noted that Plaintiff had attended drug rehabilitation and psychiatric hospitals several times previously. AR 419.  Plaintiff said she was going to live with her cousins in Fresno who had been in alcohol recovery for over ten years because she wanted to be sober. AR 419.

In December 2012, Plaintiff moved to Oklahoma to live with a man whom she subsequently left when he became violent. AR 318. In January 2013, Plaintiff was hospitalized at Red Rock in Clinton, Oklahoma, for a suicide attempt. AR 305; 317.

On February 12, 2013, Plaintiff sought mental health care at Hope Community Services (Hope) in Oklahoma City. AR 296; 301.  She reported she lived in a homeless shelter and needed refills of her medications. AR 296; 301. A Licensed Clinical Social Worker (LCSW) performed the

4

1    intake and diagnosed major depression, recurrent, severe with psychotic features; posttraumatic

2    stress disorder ("PTSD"), chronic; alcohol dependence with physiological dependence; and

3    Amphetamine dependence without physiological dependence, early partial remission.  The LCSW

4    assigned a GAF score of 47. AR 305; 318-20.

5           On March 2, 2013, Sue Rollins, a nurse at Hope examined Plaintiff for medication

6    management and observed her affect was constricted, mood was dysphoric, recent memory was

7    poor, remote memory was good, attention and concentration were poor, judgment was poor-fair and

8    insight was adequate. AR 301-302.  Rollins assigned a GAF of "about 50," continued Plaintiff's

9    prescriptions of Seroquel (antipsychotic), Prozac and Wellbutrin (anti-depressants); discontinued

10   Risperdal and Depakote because of side effects; and started her on Artane (anti-spasmodic

11   prescribed to counter side effects of psychiatric medications). AR 302. Thereafter, Plaintiff

12   underwent individual and group psychotherapy at Hope. AR 297-303; 308-314.

13          On May 16, 2013, Plaintiff was taken by ambulance to the Oklahoma University (OU)

14   Medical Center ER after being kicked out of her step-mother's house. AR 263; 268.  She had

15   intentionally overdosed on salicylate (aspirin), which was at a critical level in her system, and the ER

16   physician was notified. AR 269. Results of testing for cannabinoids, benzodiazepine, amphetamines,

17   opiates, barbiturates and alcohol were negative. AR 265.  At the time, Plaintiff reported being

18   compliant with her medications, however, the next day, she indicated she had not taken her

19   medications for two weeks. AR 263; 274; 276.

20          On May 17, 2013, Plaintiff was transferred to Internal Medicine in guarded condition for

21   treatment of her overdose.  AR 262.  Dr. Katie Washburn, assigned a sitter and recommended a

22   psychiatric consultation. AR 275.   Dr. Vincel Ray Cordry performed a psychiatric evaluation later

23   that day. AR 262; 271; 275-276. Plaintiff told Dr. Cordry she had been diagnosed with major

24   depressive disorder and dissociated disorder three years previously.  As a small child, she had been

25   sexually abused by her grandfather and witnessed her mother being physically abused by her father.

26   AR 276.  Plaintiff reported prior drug and alcohol abuse, most recently ten months before. AR 277.

27   She said she was homeless and denied current suicidal ideation. AR 277.  Dr. Cordry diagnosed

28   major depressive disorder, moderate, recurrent; and dissociated personality disorder by history.  He

assigned a GAF score of 35, recommended a hold on Plaintiff's medications until she was medically stable, and indicated she would later be evaluated by the attending psychiatrist. AR 277.

On July 26, 2013, Plaintiff presented to Manhit Dhah, FNP, (Family Nurse Practitioner), with complaints of a headache, for which Bactrium (sulfamethoxazole and trimethoprim antibiotic) was prescribed. AR 509. Plaintiff reported she was a "recovering alcoholic and meth addict" and could not be prescribed addictive medications. AR 507.

In August 2013, Plaintiff was discharged by Hope because she moved to California. AR 292. Her discharge GAF score was 48. AR 293.  Shortly thereafter, on October 23, 2013, Plaintiff underwent a clinical assessment at a Madera County Behavioral Health Services facility (Madera Clinic). A mental status examination revealed her memory and attention were poor, her cognitive processing was slow, she experienced hallucinations, and her mood was depressed. AR.783. Plaintiff was diagnosed with bipolar disorder, not otherwise specified. AR 516.

On October 29, 2013, Plaintiff presented to the Madera Hospital ER with complaints of vomiting and all over body pain.  AR 401. She said she had tried to stop drinking, but couldn't, and had not taken her medications for two months. AR 401. Results of a drug screening were negative. AR 659. She also said she was extremely depressed and felt like hurting herself. AR 404. She was diagnosed with depression with alcohol abuse as her secondary diagnosis. AR 401; 405.  Several hours later, she denied current suicidal ideation and was advised to follow-up at Behavioral Health, go to Alcoholics Anonymous meetings, and seek support from her family. AR 397.  It was determined she did not qualify for a legal hold and she was discharged on October 30, 2013. AR 397. A treatment note from the Madera Clinic, dated November 1, 2013, indicates Plaintiff had started psychotherapy with Michael Nelson, Ph.D. AR 769.

On November 15, 2013, Orlando Collado, M.D., a psychiatrist at the Madera Clinic, evaluated Plaintiff. AR 522-40. At that time, Plaintiff was living with a friend, was unemployed, and had no income. AR 524. She expressed a desire to return to her work as a medical assistant. AR 524. Dr. Collado saw no evidence of a thought disorder including no hallucinations, and observed that Plaintiff's ability to concentrate was normal and she was attentive. AR 529.  Plaintiff's insight was fair, her judgment was impaired, her immediate and recent memories were very good, and her

remote/long-term memory was good. AR 530. Dr. Collado prescribed Seroquel, Divalproex Sodium (anti-convulsant), Bupropion (Wellbutrin), and Lorazepam (anti-anxiety).  AR  534.  Thereafter, Dr. Collado continued to provide medication management for Plaintiff. AR 512-521; 535-540. On November 22, 2013, Plaintiff reported Seroquel (Quetaiapine) caused restless legs and muscle cramps, so Dr. Collado discontinued this medication and started her on Abilify. AR 535. On December 16, 2013, Dr. Collado indicated Plaintiff was compliant and much better. AR 537.

On January 23, 2014, Plaintiff reported Abilify made her angry and hungry, and Lorazepam made her sleepy and drowsy during the day. AR 537; 539.  Dr. Collado discontinued these medications and started Plaintiff on Latuda. AR 537; 539. He assigned a GAF of 45. AR 532.

On January 31, 2014, Plaintiff was placed on a legal hold and brought to the ER because she had consumed a bottle of vodka and wanted to hurt herself. AR 579. Testing for drugs was negative and testing for alcohol was positive. AR 582-84. Suicide precautions were taken and acute alcohol intoxication, depression, and anxiety were diagnosed. AR 580, 595. Plaintiff was cleared by mental health and discharged on February 1, 2014. AR 595-96.

On March 20, 2014, Plaintiff told Dr. Collado she was hearing fewer voices and experiencing less paranoia, but she also reported abdominal cramps, which Dr. Collado thought may be caused by her medications. AR 512. Plaintiff reported she last used methamphetamines one-and-a-half years ago, but had used alcohol less than a week ago. AR 516. Dr. Collado assigned a GAF of 45. AR 517.

On April 28, 2014, Plaintiff reported depression caused by stressors in her life, but said the medications were working fine. AR 514. Dr. Collado said Plaintiff was much better and assigned a GAF of 50. AR 514, 520.

### *2.    Consultive Examiners*

On January 13, 2014, Paul Martin, Ph.D., examined Plaintiff at the request of the state agency. AR 340-43. At that time, Plaintiff's medications included Abilify, Bupropion, Lorazepam and Depakote. AR 341. She reported trauma as a child, including sexual molestation, and domestic violence later on. AR 341. She also reported a history of alcohol and Methamphetamine abuse, stating she had last used Methamphetamines about eighteen months ago. AR 341.

Dr. Martin noted Plaintiff presented in a friendly and cooperative manner, but appeared highly anxious and her facial expression was nervous. AR 342. His mental status examination revealed Plaintiff's mood was anxious with congruent affect. AR 342. He noted Plaintiff's attention and concentration, fund of knowledge, abstraction, memory for recently learned information, and insight and judgment were fair, and there were no deficits in her thought process and content, nor any obvious signs of a thought disorder. AR 342. Dr. Martin diagnosed posttraumatic stress disorder, chronic, and major depressive disorder, recurrent, moderate; assigned a GAF score of 50; and indicated Plaintiff's prognosis was guarded AR 342. He opined Plaintiff had no difficulty with understanding, remembering, and carrying out simple instructions and mild difficulty with detailed and complex instructions. AR 343. Plaintiff had moderate difficulties with maintaining attention and concentration, with pace and persistence, and enduring the stress of the interview. AR 343. Dr. Martin opined that Plaintiff was likely to have severe difficulty adapting to changes in routine work-related settings, and her ability to interact with the public, supervisors, and co-workers was moderately impaired. AR 343.

### 3. State Agency Nonexamining Opinions

On February 4, 2014, Elizabeth Covy, Psy.D., a state agency psychologist, opined that Plaintiff's anxiety, affective and personality disorders were severe, but her substance addiction disorder was nonsevere. AR 70.  Dr. Covy further opined that Plaintiff had mild restrictions in her activities of daily living; moderate restrictions in maintaining social functioning; and  moderate difficulties maintaining concentration, persistence or pace. AR 70. She opined Plaintiff had the functional capacity to successfully carry out short and simple instructions on a consistent basis throughout a normal workday; superficially interact with co-workers; should have limited public interaction; and could adapt to a low-demand work setting consistent with simple work. AR 73-74.

On May 12, 2014, P. Davis, Psy.D., a state agency psychologist, reviewed Plaintiff's case and agreed with Dr. Covy's opinion. AR 85.

///

///

///

**B.  Plaintiff's Testimony**

At the hearing on September 23, 2014, Plaintiff testified she had extensive physical and mental limitations including pain in her back, depression, auditory hallucinations, and anxiety. AR 41-53. She recently had back surgery, but she still could not use her arms like she used to.  AR 45. Before the operation, she could sit for ten to fifteen minutes before having to stand up; she could stand for ten to fifteen minutes before having to sit or lie down;  and she could walk a block.  AR 47-48. Since her surgery, she can sit and stand even less, although Morphine helps her pain. AR 46.

In addition to her physical symptoms, Plaintiff also has difficulty sleeping because her mind races and she hears voices. AR 49.  Her medications help with the voices, but she still hears them, and she has difficulty paying attention when watching television. AR 49.  She avoids her family and going out in public because she does not like crowds or being around many people. AR 49-50.  She has paranoia, forgets things, and is easily distracted. AR 52.  She said she had been sober for nine months and had not used methamphetamines for two years. AR 50.

Regarding her daily activities, Plaintiff testified she has coffee and toast in the morning and goes back to bed.  AR 42. She takes naps during the day and does not go out on walks. AR 42. She does a little housework, cooks, shops a little, and belongs to the American Legion. AR 41-42.

**III. THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a),

416.920(a).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 404.1513, 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;  and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

**A.  The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 21-31.  More particularly, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014, and that she had not engaged in any substantial gainful activity since May 15, 2010, the alleged disability onset date. AR 23.  Further, the ALJ identified lumbar degenerative disc disease, cervical degenerative disc disease status post fusion, obesity, alcohol dependence, bipolar disorder, depressive disorder, and amphetamine dependence in reported remission as severe impairments. AR 23.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 23-24.

Based on her review of the entire record, the ALJ determined Plaintiff had the RFC to perform a range of light work that was simple and routine with occasional contact with the public, co-workers and supervisors. AR 25.  After considering the testimony of a vocational expert, the ALJ found that Plaintiff could not perform any past relevant work.  AR 29.  However, she determined Plaintiff could perform jobs that exist in significant numbers in the national economy, including a marker, a can filler, and a garment sorter.  AR 30.  As a result, Plaintiff was not disabled under the Social Security Act. AR 24.

**IV. SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id.*  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id.*

**V. DISCUSSION**

**A.  The ALJ's Assessments of the Medical Opinions Regarding Plaintiff's Mental Impairments and the RFC are Supported by Substantial Evidence.**

Plaintiff argues that the ALJ improperly assessed the medical evidence by failing to adopt Dr. Martin's limitations. Specifically, Plaintiff contends that the ALJ improperly rejected Dr. Martin's opinion that Plaintiff would have "severe" difficulty adapting to changes in routine work-related settings, and consequently, did not include this limitation in her RFC finding.[4] AR 25; 343. (Doc. 19, pgs. 16-22).  Defendant argues that the ALJ properly assessed Plaintiff's mental RFC and resolved conflicts in the medical opinions by giving weight to the opinions that are most consistent with the medical record.  In doing so, Defendant contends that the ALJ properly found that Plaintiff had ongoing addiction and medication compliance issues, and that her symptoms were exacerbated by drinking alcohol and failing to take her medications as prescribed. (Doc. 23, pg. 11).

---

[4] Plaintiff also argues that the ALJ improperly rejected Dr. Martin's opinion that Plaintiff's prognosis was guarded, and that she had moderate difficulty enduring the stress of the interview.  However, the Court disagrees with Plaintiff that these are limitations, as these finding are not functional assessments related to Plaintiff's ability to perform specific work- related tasks, but rather they are observations made during the interview.

### 1.   *The ALJ's Findings*

When evaluating Plaintiff's mental impairments and the doctors' opinion evidence, the ALJ gave Mr. Martin's opinion "great weight" but stated:

> [I] do not fully adopt it because the level of severity in adaptation is not supported by the objective evidence of record. The claimant's mental condition was exacerbated at times, but drug and alcohol use appear to be the major cause of the problem. Additionally, the claimant was noncompliant with medication[s] at the time of her overdoses. When the claimant was sober and medically compliant, mental status examination[s] were generally normal.

AR 28.  The ALJ then relied on non-examining state agency Drs. Covey and Davis' opinions. Both doctors found that Plaintiff was capable of doing simple repetitive tasks with limited interaction with others. AR 69, 91.  When adopting these opinions, the ALJ noted :

> I give the State agency psychological assessments great weight because the medical evidence in the record supports them.  Although the claimant had many overdoses, they were due to drinking large amounts of alcohol and being medically noncompliant.  Additionally, the claimant admitted that medication controls the symptoms.  Furthermore, mental status examinations were generally normal, including no hallucinations when medically complaint.

AR 28.

### 2.   *Discussion*

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations.  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Generally, the opinion of a treating physician is afforded the greatest weight.  *Id.*  Similarly, the opinion of an examining physician is given more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas*, 278 F.3d at 956–57; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). For example, the ALJ may reject the opinion of an examining physician in favor of a conflicting opinion of another examining or treating physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation and internal quotation marks omitted). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. (citation and internal quotation marks omitted).

However, "the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan*, 169 F.3d at 602 (citations omitted). The opinions of non-examining physicians may serve as substantial evidence when the opinions are "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 751-55).

There is no dispute regarding the content of the medical records, or the doctors' opinions. Instead, the parties are disputing the weight that the ALJ accorded the physicians' opinions, and the interpretation of the medical record. Because there are conflicting medical opinions, the ALJ must give specific and legitimate reasons to reject Dr. Martin's opinion. *Lester*, 81 F.3d at 830. Here, the main reasons that the ALJ discounted Dr. Martin's opinion were that Plaintiff's symptoms were due to drinking large amounts of alcohol and she was non-compliant with her medications. Further, when Plaintiff was taking her medications, the ALJ noted that mental status examinations were generally normal and she experienced no hallucinations. AR 28. Finally, when taking her medications, Plaintiff reported that her symptoms were controlled. AR 28.

Plaintiff argues that the ALJ's reasoning is improper because: (1) the ALJ did not identify what objective evidence contradicted Dr. Martin's opinion; (2) the ALJ did not properly assess Plaintiff's alcohol use pursuant to 20 C.F.R. § 404.1535(b)(2)(i); (3) the ALJ failed to ask Plaintiff why she did not take her psychotropic medications before relying on the fact that she was non-compliant with her treatment; and (4) the ALJ misconstrued the purpose of mental status examinations, and that a review of the GAF scores given by Plaintiff's other medical providers supports a finding of disability.

### a.   The ALJ's Evaluation of the Medical Record Evidence was Proper.

A review of the medical record reveals that Plaintiff's arguments are misguided.  First, the ALJ did identify the objective evidence in the medical record she was relying on in reaching her conclusions.  After noting the lack of medical evidence in the record, the ALJ states, "The claimant's mental condition was exacerbated at times, but drug and alcohol use appear to be the major cause of the problem. Additionally, the claimant was noncompliant with medication[s] at the time of her overdoses. When the claimant was sober and medically compliant, mental status examination[s] were generally normal." AR 28.   The ALJ then gave great weight to the non-examining physicians' opinions, both of whom outlined Plaintiff's 5150 history, and noted that Plaintiff's alcohol dependency and non-compliance with medication exacerbated her conditions. AR 28; 69; 71; 83-92. Reliance on this evidence was proper. *Thomas*, 278 F.3d at 957 (The opinions of non-examining physicians may serve as substantial evidence when the opinions are "consistent with independent clinical findings or other evidence in the record.").

Additionally, prior to reviewing the physician opinion evidence, the ALJ discussed Plaintiff's history of suicide attempts and noted that they all appeared to involve alcohol intoxication and pills, as well as incidences of methamphetamine use.  AR 27 citing Exhibits 5F (AR 345-510) and 7F (AR 546-767).  This observation is supported by the medical record as almost all of Plaintiff's hospitalizations involved alcohol or drugs.  AR 420; 448; 454; 458; 466; 482; 489; 579; 582-584; 682-683; 689; 690-693; 731-734; 736-743; 745; 755-756.  The ALJ further noted that Plaintiff reported she had been non-compliant with taking her medications and went weeks to months without taking her medications (AR 27), and that when she reported no alcohol use, her medications were

14

effective.  AR 27.  The ALJ again cited specific documents in the medical record to support his

conclusion. *See*, AR 27; 276 (off medications for two weeks, had previously been stable while taking

meds); AR 512 (mood is stable with no auditory hallucinations while on medications); AR 514

(same with less auditory hallucinations); AR 527-530 (no hallucinations, thought process and

content normal); AR 558 (Plaintiff recently reporting psychiatric condition under control and stable);

AR 401, 404 (not taking medication for two months, drinking, and wanting to hurt herself). These all

constitute specific and legitimate reasons to reject portions of Dr. Martin's evaluation.  *Lester*, 81

F.3d at 830; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216–17 (9th Cir. 2005) (holding that ALJ may

reject a medical opinion when the conclusion's breadth is unsupported by the clinical findings).

        Plaintiff argues that this medical evidence establishes nothing more than proof that Plaintiff

wanted to die and used alcohol and /or prescription drugs as a vehicle for her suicide attempts.  She

also argues the ALJ improperly interpreted the mental status examinations because these tests

generally are only designed to assess cognitive functioning, rather than depression and anxiety which

are Plaintiff's psychological impairments. (Doc. 16, pgs. 17-19).

        As a preliminary matter, the Court notes that Plaintiff's recent mental status exam performed

by Dr. Callado assessed mood and affect, as well as cognitive functioning.  AR 527-530.  Moreover,

while the Court is sympathetic to Plaintiff's position, deference must be given to the ALJ's

interpretation of the evidence when more than one rational interpretation exists.  Put another way,

substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support

a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Here, the ALJ's interpretation of the

evidence is reasonable and is supported by the record.  Plaintiff's hospitalizations involved drug and

alcohol abuse, and her mental impairments (as noted in the mental status exams) improved when she

was not drinking and taking her medications as prescribed.  AR 342; 527-530.  If the evidence is

susceptible to more than one rational interpretation as it is here, the Court may not substitute its

judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d at  954; *Morgan v.

Commissioner of Social Sec. Admin*., 169 F.3d at  599.

15

### b.    The ALJ Properly Assessed Plaintiff's Drug and Alcohol Abuse.

Second, Plaintiff argues the ALJ was required to assess Plaintiff's alcohol use pursuant to 20 C.F.R. § 404.1535(b)(2)(i).[5] However, this procedure is applicable only after a person is found to be disabled. 20 C.F.R. § 404.1535(a) provides as follows:

> "*If we find you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcohol addiction is a contributing material factor to the determination of disability." (emphasis added).

The Ninth Circuit has held that the regulations make clear that a finding of disability is a condition precedent to implementing this regulation. *Bustamante v. Massanari*, 262 F. 3d 949, 955 (9th Cir. 2001). Specifically, when assessing the role of alcohol or drug abuse, an ALJ must conduct the five-step inquiry without separating out the impact of alcoholism. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the above procedure. *Bustamonte*, 262 F. 3d at 955. If the ALJ finds the claimant is disabled, and there is medical evidence of drug of alcohol abuse, the ALJ should proceed under § 404.1535(a) to determine whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. *Id*.

In this case, Plaintiff reported that she was not drinking or using Methamphetamine by the time the hearing was held, so this regulation is not applicable. AR 50. Moreover, the ALJ considered Plaintiff's alcohol use and determined that once Plaintiff had stopped drinking, her psychological condition improved such that she was not disabled and she could work with certain limitations. AR 25-29. Thus, the ALJ was not required to do any analysis under § 404.1535(a). Finally, even if Plaintiff had been found to be disabled, she has the burden in steps one through four of the sequential evaluation process to prove drug or alcohol use is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F. 3d 742, 748 (9th Cir. 2007). As outlined above, during the

---

[5] A finding of disabled under the five-step inquiry does not automatically qualify a claimant for disability benefits. Under the provisions added by the Contract with America Advancement ( "CAA") Act, Pub. L. No. 104-121, 110 Stat. 847 (March 29, 1996), an individual shall not be considered to be disabled if alcoholism or drug addiction would be a contributing factor material to the Commissioner's disability assessment. 20 C.F.R. § 404.1535(a) promulgates the CAA.

relevant time period, examining medical sources noted acute alcohol intoxication and/or drug abuse. AR 431; 448; 466; 652; 733-734; 742; 745-746. Therefore, Plaintiff has not met her burden to demonstrate that alcohol addiction is not a contributing factor to her condition.

### c. The ALJ Appropriately Considered Plaintiff's Treatment History

Plaintiff argues that it is improper for disability benefits to be denied because of a failure to obtain treatment based on a lack of funds. *Orn v. Astrue*, 495 F. 3d 625, 638 (9th Cir. 2007); *Warre v. Comm'r of Soc. Sec.*, 439 F. 3d 1001, 1006 (9th Cir. 2006); SSR 82-59 *3 ("Claimant should be given an opportunity to fully express the specific reason for not following the prescribed treatment"). She argues that had the ALJ asked, she *may* have learned Plaintiff was noncompliant with taking her medications because she could not pay for her medications and was uninsured at least through November 22, 2013. AR 197, 210, 599. (Doc. 19, pgs. 16-17).

Preliminarily, counsel's vague assertion that Plaintiff "may" not have taken her medication due to a lack of funds raises concerns about the veracity of this statement.  In this instance, the ALJ specifically asked about Plaintiff's medication regime at the hearing. At no time did Plaintiff indicate that she previously did not take her medications because she unable to afford them.  AR 49. Additionally, Plaintiff was represented by an attorney during the administrative hearing.  Despite extensive questioning in other areas, her counsel never raised Plaintiff's inability to pay for her mediations as an obstacle that the ALJ should consider. AR 36; 51-53; 56-61.

Furthermore, a review of the administrative record does not support counsel's position.  The records cited by Plaintiff references her inability to pay for medications in October and November of 2013. AR 197; 210; 599.  Prior to that time, the record does not reflect that Plaintiff advised health care providers that she was not compliant with her medication because of an inability to pay for them.  AR 276; 458; 466; 684.  Furthermore, Plaintiff was under the care of Dr. Collado in November 2013.  It is during this time period that she was taking medications and her condition had stabilized.  AR 522-540.  In fact, she signed consent forms to receive her medications.  AR 803. Thus, even if the ALJ erred by not specifically asking Plaintiff to explain the reasons for her inability to stay on medications, the ALJ's statement that Plaintiff's condition subsequently improved when she was medicinally compliant is supported by the record and renders any error harmless.

> #### *d.  The ALJ was Not Required to Give Deference to Plaintiff's GAF Ratings.*

Finally, the Court is not persuaded by Plaintiff's argument that other practitioner's GAF scores, which ranged from the mid-forties to mid-fifties, are indicative of the severity of her disability.[6]  The Commissioner has determined that the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings."  65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000).  In this case, none of the doctors made more specific findings regarding Plaintiff's ability to work other than to access a GAF score.  Their failure to make more specific findings means the opinion was not entitled to deference.  *Morgan v. Comm'r*, 169 F. 3d at 601 (Where a doctor identifies symptoms that might limit a claimant's ability to work, but does not explain how her symptoms translate into specific functional deficits which preclude work activity, the opinion is not entitled to deference).  Accordingly, the ALJ did not err in failing to consider Plaintiff's GAF scores.

For the reasons state above, the Court finds the ALJ's assessment of the medical evidence is supported by substantial evidence and Plaintiff's RFC is proper.

### B.  The ALJ Properly Discredited Plaintiff's Subjective Complaints.

#### *1.  The ALJ's Findings*

When evaluating the Plaintiff's credibility, the ALJ stated as follows:

> As for claimant's credibility, I find she is partially credible, but not to the extent alleged.  Although the claimant had many 5150s with some hospitalizations, they all seemed to involve alcohol intoxication and pills.

> Further diminishing claimant's credibility is her report that she stopped working due to difficulty maintaining a job because of her substance abuse.

> The claimant also stated she did not do any yard work; however, the medical records contradict this.

> The claimant was medicinally noncompliant with antipsychotic medications, which further weakens her credibility because the record showed that her mental conditions were stable and controlled when medicinally compliant.

---

[6] A GAF of 41-50 corresponds to serious symptoms or any serious impairment in social, occupational, or school functioning. *Id*. A GAF of 51-60 corresponds to moderate symptoms or moderate difficulties in social, occupational, or school functioning. *Id*.

AR 29 (citation omitted).

## 2. *Discussion*

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.*; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.") Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and 3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, there is no finding of malingering, so the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown –Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester*, 81 F.3d at 834. A review of the record reveals that the ALJ's credibility determination is supported by substantial evidence.

First, as previously explained, the medical records support the ALJ's findings that alcohol played a role in Plaintiff's mental impairments, and that her condition worsened when she was medicinally noncompliant, but stabilized when taking her medications regularly. AR  276; 401; 404; 512; 514; 527-530; 558. These are proper bases to reject the Plaintiff's testimony. *Osenbrock v. Apfel*, 240 F. 3d 1157, 1166-67 (9th Cir. 2001) (Affirming an adverse credibility determination

based in part by Plaintiff's alcohol abuse); *Warre Comm'r of Soc. Sec. Admin*., 439 F.3d at 1006 (Impairments that are effectively controlled with medication are not disabling); *Chaudhry v. Astrue*, 885 F.3d 661, 672 (9th Cir. 2012) (The ALJ may consider a failure to follow a prescribed course of treatment in discrediting a claimant's credibility); *Fair v. Bowen*, 885 F.2d 597, 603-604 (9th Cir. 1989) (Failure to follow prescribed treatment can be considered in determining credibility); *Bunnell v Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (Factors to evaluate credibility include medication effectiveness and treatment).

Additionally, the ALJ properly noted that Plaintiff told her doctors that she had not worked in the past due to her substance abuse. This is also a valid reason to discredit Plaintiff's testimony. AR 516; *Burton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (As part of the credibility assessment, the ALJ considered claimant's work history and his admission that he left his job for reasons other than his alleged impairment); *Drouin v. Sullivan*, 966 F.2d 1255, 1259 (9th Cir. 1992) (finding ALJ did not err in considering that, "according to [the claimant's] own testimony, she did not lose her past two jobs because of pain").

Notwithstanding the above, the Court finds that the ALJ improperly relied on Plaintiff's reports of her inability to do yardwork as a basis to reject her testimony. As Plaintiff properly notes, in October 2013, she reported that she did not do yard work because she felt tired and depressed. AR 193. In May 2014, Plaintiff was injured while doing yard which exacerbated her back pain. AR 823. These statements are not necessarily contradictory. However, even assuming the ALJ erred in considering this factor, that error is harmless where the other reasons offered are proper and are supported by substantial evidence. *See Carmickle v. Commissioner of Social Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm. of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004) (As long as substantial evidence remains supporting the ALJ's conclusions regarding credibility, and the error does not negate the validity of the ALJ's ultimate conclusion, such error is deemed harmless and does not warrant reversal).

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's testimony was not credible. The ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints.

1    *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834.  It is not the role of the Court to re-

2    determine Plaintiff's credibility *de novo*.  If the ALJ's finding is supported by substantial evidence,

3    the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.  Accordingly, the ALJ's

4    credibility determination was proper.

5        **C.  The ALJ Properly Discounted the Lay Witness' Testimony.**

6        On November 1, 2013, Plaintiff's friend, Jack McKenzie, stated he had known Plaintiff over

7    two years and saw her four hours a day. AR 203.  He reported that during the day, Plaintiff cried,

8    watched television, and wrote in journals. AR 204. She also did light housework, but needed

9    someone to do her laundry for her, and couldn't cook complete meals. AR 205. She was afraid to

10   leave the house and angered easily. AR. 203. She needed reminders to take her medications and to

11   go places. AR 205, 207. She did not like stress and did not handle it well. AR 209.

12       Plaintiff argues that the ALJ failed to give legally adequate reasons for rejecting Mr. McKenzie's

13   statement.  Defendant contends that the ALJ's rejection of this testimony is proper. A review of the

14   record reveals that the Commissioner is correct.

15       "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony

16   concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir.

17   2006); 20 C.F.R. § 404.1513(d)(4). "Lay witness testimony is competent evidence and cannot be

18   disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting

19   *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must give specific reasons

20   germane to the witness in discounting the lay witness testimony. *Stout*, 454 F.3d at 1056. If the ALJ

21   gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony

22   provided by lay witnesses, the ALJ may also reject the lay witness testimony. *Molina v. Astrue*, 674

23   F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 694

24   (9th Cir. 2009)).

25       Here, after summarizing the testimony, the ALJ rejected Mr. McKenzie's statement based on the

26   following:

27
28       Since he is not medically trained to make exacting observations as to the dates,

21

frequencies, types and degrees of medical signs and symptoms, of the frequency or intensity of unusual moods or mannerisms, the accuracy of the statement is questionable. Most importantly, significant weight cannot be given to the witness' statement because it is simply not consistent with the preponderance of the opinions and observations by medical doctors in the case. For example, claimant drank excessive amounts of alcohol and was medicinally noncompliant during overdoses. When the claimant is medicinally compliant, the mental conditions are controlled and stable. Furthermore, the claimant is not able to ambulate without an assistive device and diagnostic images showed no serious nerve impingement, spinal stenosis, or compression.

AR 28-29.  Thus, the main reason the ALJ rejected Mr. McKenzie's testimony is it is not consistent with the opinions and observations of the medical doctors in this case. Specifically, the ALJ discusses Plaintiff's alcohol abuse and the fact that when Plaintiff is medicinally complaint, her mental conditions are controlled and stable. As previously discussed, these findings are supported by the medical record.  Furthermore, because the ALJ properly discredited Plaintiff's testimony on this basis, reliance on this reason to discredit Mr. McKenzie is also proper. "If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d at 1114 (citing *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 694 (9th Cir. 2009)).

Notwithstanding the above, rejection of Mr. McKenzie's testimony on the basis that the witness is not trained to make exacting observations regarding medical signs and treatments is improper.  It is clear that as a lay person, Mr. McKenzie was qualified to give an opinion regarding Plaintiff's ability to work - he is not required to be a medical expert to give lay testimony. *See Bruce*, 557 F.3d at 1116 (A lay person, though not a medical or vocational expert is not disqualified from rendering an opinion as to how claimant's condition affected his ability to work).  Similarly, the last reason - that Plaintiff does not use an assistive device – is also not a specific and germane reason to reject Mr. McKenzie's testimony since Plaintiff correctly points out that Mr. McKenzie never testified to this fact.  AR 203-210. However, these error are harmless because as previously explained, the ALJ's other reason is supported by substantial evidence.

Finally, even *assuming arguendo* the Court found the ALJ had erred by not providing a germane reason for disregarding Mr. McKenzie's statement, reversal is not required here.  The Ninth Circuit has held that "where the ALJ's error lies in a failure to properly discuss competent lay testimony

favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Commissioner*, 454 F.3d at 1056.  In light of this record, no reasonable ALJ would have reached a different disability determination.

**D.  CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not disabled is supported by substantial evidence, and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is **DIRECTED** to enter judgment in favor of Carolyn W. Colvin, the Commissioner of Social Security and against Plaintiff, Michelle Brumbaugh- Sandoval.

IT IS SO ORDERED.

Dated:   **August 19, 2016**                    /s/ Erica P. Grosjean
                                             UNITED STATES MAGISTRATE JUDGE